## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                          )       Chapter 7

                                    )

BRYAN S. SCHMIDT and        )       Case No. 09-37631
RHIANNON S. SCHMIDT,        )

                                    )

           Debtors.                 )       Honorable A. Benjamin Goldgar

## NOTICE OF MOTION

TO:     See Service List

**PLEASE TAKE NOTICE** that on September 18, 2020 at 11:00 A.M., I will appear before the Honorable A. Benjamin Goldgar, or any judge sitting in that judge's place, and present the Motion For Sanctions, a copy of which is attached.

**This motion will be presented and heard telephonically.** No personal appearance in court is necessary or permitted. To appear and be heard telephonically on the motion, you must set up and use an account with court Solutions, LLC. You can set up an account at 222.Court-Solutions.com or by calling Court Solutions at (917) 746-7476.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

> James T. Magee [#1729446]
> MAGEE HARTMAN, P.C.
> Attorney for Debtors
> 444 North Cedar Lake Road
> Round Lake, Illinois 60073
> (847) 546-0055

## CERTIFICATE OF SERVICE

I, JAYNE J. RENDALL, certify [if an attorney]/declare under penalty of perjury under the laws of the United States of America [if a non-attorney] that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on August 28, 2020 at the United States Post Office facility at Round Lake Beach, Illinois before 5:30 P.M.

Subscribed and sworn to before me this 28th of August, 2020.

Notary Public

cc:     Bryan and Rhiannon Schmidt

OFFICIAL SEAL.
JAMES T MAGEE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/29/2021

## <u>SERVICE LIST</u>

Student Loan Solutions, LLC
c/o Cogency Global, Inc., Registered Agent
600 South Second Street, #404
Springfield, IL 62704


Student Loan Solutions, LLC
Christopher P. Ruh, Manager
707 Land Fall Drive
Rock Hill, SC 29732


Markoff Law, LLC
29 North Wacker Drive, #1010
Chicago, IL 60606


Markoff Law, LLC
service@markofflaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                                    )
                                          )
BRYAN S. SCHMIDT and                      )    Case No. 09-37631
RHIANNON S. SCHMIDT,                      )
                                          )
          Debtors.                        )

## MOTION FOR SANCTIONS

Now come the Debtors, BRYAN S. SCHMIDT and RHIANNON S. SCHMIDT, (hereinafter referred

to as "Debtors"), by and through their Attorneys, MAGEE HARTMAN, P.C., and pursuant to Section 524(a)

of the United States Bankruptcy Code moves the Court to enter its Order awarding sanctions against Creditor

STUDENT LOAN SOLUTIONS, LLC (hereinafter referred to as "Creditor") for violation of the permanent

discharge injunction, and in support of this Motion state as follows:

  1.  The Debtors filed a Chapter 7 Petition in Bankruptcy on October 9, 2009; Discharge

of Joint Debtors was filed on January 5, 2010; and the case closed on January 8, 2010. *Exhibit 1 hereto*,

Discharge of Joint Debtors in Case 09-37631.

  2.  In their Petition, Debtors listed a creditor AES Bank of America. *Exhibit 2 hereto*,

Debtor's Schedule F – Creditors Holding Unsecured Nonpriority Claims.

  3.  The Creditor STUDENT LOAN SOLUTIONS, LLC alleges that it is an assignee of a

listed creditor, AES Bank of America.

  4.  Creditor STUDENT LOAN SOLUTIONS, LLC has now filed suit against Debtors

seeking to collect this discharged debt.  *Exhibit 3 hereto*, Summons and Complaint in 19th Judicial Circuit,

Lake County, Illinois Case # 19 AR 561.

  5.  On November 26, 2019, Debtors' Attorney sent Creditor, via Creditor's Attorneys, a

letter advising of the Bankruptcy and Debtors' Discharge, and requesting dismissal of the lawsuit filed in state

court. *Exhibit 4.*

1

6.    Debtors' Attorney has also discussed the Discharge and Bankruptcy with Creditors' Attorneys.

7.    Despite demand and knowledge of the Discharge, Creditor's Attorneys have refused to dismiss the state court collection lawsuit, claiming that the debt Creditor is suing upon was not discharged in the Debtors' Bankruptcy.

8.    In Debtors' Petition, the subject loan was listed in "Schedule F – Creditors Holding Unsecured Nonpriority Claims" and neither Creditor nor Creditor's predecessor-in-interest have ever objected to the loan classification as a non-priority claim subject to discharge, nor have they ever filed an adversary proceeding seeking to have the loan debt declared non-dischargeable.

9.    The subject loan debt was discharged in Debtors' Bankruptcy, as the loan was not an educational loan within the meaning and ambit of Section 523(a)(8)(A)(i) of the Bankruptcy Code, nor a qualified educational loan incurred to solely to pay for qualified higher education expenses within the meaning and ambit of Section 523(a)(8)(B) of the Bankruptcy Code.

10.    Creditor intends to proceed with its state court debt collection lawsuit, and Debtors have been forced to retain counsel and appear and defend the state court action, as well as seek relief from the Bankruptcy Court for violation of the permanent discharge injunction.

**WHEREFORE**, the Debtors, BRYAN S. SCHMIDT and RHIANNON S. SCHMIDT, move the Court pursuant to Section 524(a) of the United States Bankruptcy Code to determine and award Debtors their actual damages including costs and reasonable attorney's fees and punitive damages in such amount as deemed appropriate by the Court.

BRYAN S. SCHMIDT and RHIANNON S.
SCHMIDT, Debtors;

By: _____
        James T. Magee, their Attorney.

James T. Magee (#1729446)
MAGEE HARTMAN, P.C.
444 North Cedar Lake Road
Round Lake, Illinois 60073
bk@mageehartman.com
(847) 546-0055

2

B18J (Official Form 18J) (12/07)

# United States Bankruptcy Court

## Northern District of Illinois
### Case No. 09−37631
### Chapter 7

In re: Debtors (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

Bryan S Schmidt
5395 Virginia Court
Gurnee, IL 60031

Rhiannon S. Schmidt
5395 Virginia Court
Gurnee, IL 60031

Social Security / Individual Taxpayer ID No.:
    xxx−xx−3205

xxx−xx−6879

Employer Tax ID / Other nos.:

## DISCHARGE OF JOINT DEBTORS

It appearing that the debtors are entitled to a discharge, **IT IS ORDERED:** The debtors are granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

FOR THE COURT

Dated: January 5, 2010

Kenneth S. Gardner, Clerk
United States Bankruptcy Court

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

Exhibit 1

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes (in a case filed on or after October 17, 2005);

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

# CERTIFICATE OF NOTICE

District/off: 0752-1          User: mgonzalez          Page 1 of 2          Date Rcvd: Jan 05, 2010
Case: 09-37631               Form ID: b18             Total Noticed: 40

The following entities were noticed by first class mail on Jan 07, 2010.
```
db/jdb      +Bryan S Schmidt,   Rhiannon S. Schmidt,   5395 Virginia Court,   Gurnee, IL 60031-6322
aty         +James T Magee,   Magee Negele & Associates P C,   444 N Cedar Lake Rd,
             Round Lake, IL 60073-2802
tr          +Joseph E Cohen, Tr.,   Cohen & Krol,   105 West Madison Suite 1100,   Chicago, IL 60602-4600
14555186    +AAvantage Corp. Card,   c/o Creditone, LLC,   P. O. Box 851,   Concord, CA 94522-0851
14823155    +ACL Inc PC,   8901 West Lincoln Avenue,   Milwaukee, WI 53227-2409
14555189    +AES Bank Of America,   P. O. Box 2641,   Harrisburg, PA 17105-2641
14555187     Advocate Condell Med Ctr,   c/o Computer Credit, Inc.,   P. O. Box 5238,
             Winston-Salem, NC 27113-5238
14555188    +++Advocate Lutheran General Hospital,   Patient Financial Services,   1775 West Dempster,
             Park Ridge, IL 60068-1143
14555191    +Baxter Credit Union,   340 North Milwaukee Avenue,   Vernon Hills, IL 60061-1533
14555192    +Capital One Bank,   c/o Capital Mgmt Serv.,   726 Exchange St., #700,   Buffalo, NY 14210-1464
14555200    +++Capital Recovery III LLC (GECAF-ABT TV),   c/o Recovery Management Systems Corp,
             attn: Ramesh Singh,   25 S.E. 2nd Avenue Suite 1120,   Miami, FL 33131-1605
14555193    +Chase,   Attn: Bankrutpcy Dept,   P. O. Box 10587,   Greenville, SC 29603-0587
14555195     College Assist,   3015 South Park Road,   Suite 400,   Aurora, CO 80014
14555196     Condell Medical Center,   c/o Computer Credit, Inc.,   P. O. Box 5238,
             Winston-Salem, NC 27113-5238
14823157    +Condell Medical Center,   c/o Harris & Harris Ltd,   222 Merchandise Mart Plaza Suite 1900,
             Chicago, IL 60654-1421
14555199    +FNB Omaha,   P. O. Box 3412,   Omaha, NE 68103-0412
14555197    +First National Bank,   Attn: Bankruptcy Dept,   P. O. Box 3331 Stop Code 3105,
             Omaha, NE 68103-0331
14555198     First National Bank of Omaha,   P. O. Box 2557,   Omaha, NE 68103-2557
14555201    +Great Lakes Credit Union,   2525 Green Bay Road,   North Chicago, IL 60064-3082
14555202    +HBLC/GECAF/Jewelry Express,   c/o Steven J. Fink & Assoc.,   25 E. Washington, #1233,
             Chicago, IL 60602-1876
14555203     Highland Park Ob-Gyn Assoc.,   60 Revere Drive,   Suite 750,   Northbrook, IL 60062-1593
14555204    +IL State Tollway Authority,   c/o Arnold Scott Harris, P.A.,   222 Merchandise Mart Plaza, #1932,
             Chicago, IL 60654-1103
14823151    +Illinois Collection Services Inc,   PO Box 1010,   Tinley Park, IL 60477-9110
14555205    +Johnson Co. Wastewater,   c/o Kansas Counselors,   P. O. Box 14765,
             Shawnee Mission, KS 66285-4765
14823152    +Just Energy,   PO Box 5598,   Chicago, IL 60680-5598
14823158    +Keenan Law Firm PA,   2200 Lakin P.O. Drawer 459,   Great Bend, KS 67530-0459
14555206    +Lake County Acute Care LLP,   c/o United Collection Bureau,   4400 North High Street,
             Columbus, OH 43214-2635
14555208    +Midway Emergency Physicians,   P. O. Box 320006,   Birmingham, AL 35232-0006
14555207    +Midway Emergency Physicians,   c/o Durham & Durham, LLP,   5665 New Northwide Dr., #340,
             Atlanta, GA 30328-5834
14555209     Midwest Diagnostic Pathology, SC,   75 Remittance Dr., #3070,   Chicago, IL 60675-3070
14555210    +Nelnet,   Attn: Claims,   P. O. Box 17460,   Denver, CO 80217-0460
14555211    +Nelnet Loans,   6420 Southpoint Pkwy,   Jacksonville, FL 32216-0944
14555214    +US Dept Of Education,   P. O. Box 5609,   Greenville, TX 75403-5609
14555213    +US Dept Of Education,   Attn: Borrowers Service Dept,   P. O. Box 5609,
             Greenville, TX 75403-5609
14555215     Vista Medical Center East,   99 Greenwood Avenue,   Waukegan, IL 60087-5136
```

The following entities were noticed by electronic transmission on Jan 05, 2010.
```
tr          +EDI: QJECOHEN.COM Jan 05 2010 19:08:00    Joseph E Cohen, Tr.,   Cohen & Krol,
             105 West Madison Suite 1100,   Chicago, IL 60602-4600
14823156    +E-mail/Text: collect@arspif.com                         Account Recovery Service Inc,
             3031 North 114th Street,   Milwaukee, WI 53222-4218
14555190    +EDI: AMEREXPR.COM Jan 05 2010 19:03:00    American Express,   P. O. Box 6618,
             Omaha, NE 68106-0618
14555194    +EDI: CHASE.COM Jan 05 2010 19:08:00    Chase,   P. O. Box 15298,   Wilmington, DE 19850-5298
14823154    +EDI: CHASE.COM Jan 05 2010 19:08:00    Chase Bank,   340 South Cleveland Bldg 370,
             Weserville, OH 43081-8917
14823153    +EDI: AFNIVZWIRE.COM Jan 05 2010 19:03:00    Verizon Wireless,
             26935 Northwestern Highway Suite 100,   Southfield, MI 48033-8449
                                                                              TOTAL: 6
```

```
            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
14555212*   +Nelnet Loans,   6420 Southpoint Pkwy,   Jacksonville, FL 32216-0944
                                                                              TOTALS: 0, * 1
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Addresses marked '+++' were transmitted to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(e).

District/off: 0752-1          User: mgonzalez          Page 2 of 2          Date Rcvd: Jan 05, 2010
Case: 09-37631               Form ID: b18              Total Noticed: 40

***** BYPASSED RECIPIENTS (continued) *****

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jan 07, 2010                    Signature: _____

B6F (Official Form 6F) (12/07)

In re  Bryan S. Schmidt & Rhiannon S. Schmidt  ,          Case No. _____
                 Debtor                                                                                    (If known)

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  8527 <br> AAvantage Corp. Card <br> c/o Creditone, LLC <br> P. O. Box 851 <br> Concord, CA 94524 | | H | Balance on Account | | | | 19,206.63 |
| ACCOUNT NO.  6764 <br> Advocate Condell Med Ctr <br> c/o Computer Credit, Inc. <br> P. O. Box 5238 <br> Winston-Salem, NC 27113-5238 | | J | Balance on Account | | | | 195.20 |
| ACCOUNT NO. <br> Advocate Lutheran General <br> 1775 West Dempster <br> Park Ridge, IL 60068 | | J | Balance on Account | | | | 1,862.00 |
| ACCOUNT NO.  0001 <br> AES Bank Of America <br> P. O. Box 2641 <br> Harrisburg, PA 17105 | | J | Non-Qualifying Student Loan | | | | 34,810.00 |

___5___ continuation sheets attached

Subtotal ▶ | $ | 56,073.83

Total ▶ | $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

**Exhibit 2**

Bankruptcy2009 ©1991-2009, New Hope Software, Inc. ver. 4.4.6-740 - 32262 - Adobe PDF

B6F (Official Form 6F) (12/07) - Cont.

In re  Bryan S. Schmidt & Rhiannon S. Schmidt                    ,         Case No. _____
_____
           **Debtor**                                                                    **(If known)**

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  1008 <br><br> American Express <br> P. O. Box 6618 <br> Omaha, NE 68105-0618 | | H | Balance on Account | | | | 5,198.74 |
| ACCOUNT NO.  9745 <br><br> Capital One Bank <br> c/o Capital Mgmt Serv. <br> 726 Exchange St., #700 <br> Buffalo, NY 14210 | | H | Balance on Account | | | X | 577.35 |
| ACCOUNT NO.  5727 <br><br> Chase <br> Attn: Bankrutpcy Dept <br> P. O. Box 10587 <br> Greenville, SC 29603 | | H | | | | | Notice Only |
| ACCOUNT NO.  8316 <br><br> Chase <br> P. O. Box 15298 <br> Wilmington, DE 19850 | | H | Balance on Account | | | | 7,044.00 |
| ACCOUNT NO. <br><br> College Assist <br> 3015 Sourth Park Road <br> Suite 400 <br> Aurora, CO 80014 | | H | | | | | Notice Only |

Sheet no. __1__ of __5__ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal ▶ | $ | 12,820.09
Total ▶ | $ |

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re  Bryan S. Schmidt & Rhiannon S. Schmidt _____,   Case No. _____
                    Debtor                                                           (If known)

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  3583<br><br>Condell Medical Center<br>c/o Computer Credit, Inc.<br>P. O. Box 5238<br>Winston-Salem, NC 27113-5238 | | J | Balance on Account | | | | 812.00 |
| ACCOUNT NO.  7261<br><br>First National Bank<br>Attn:  Bankruptcy Dept<br>P. O. Box 3331  Stop Code 3105<br>Omaha, NE 68103 | | H | | | | | Notice Only |
| ACCOUNT NO.  0105<br><br>First National Bank of Omaha<br>P. O. Box 2557<br>Omaha, NE 68103-2557 | | W | Balance on Account | | | | 3,999.50 |
| ACCOUNT NO.  7261<br><br>FNB Omaha<br>P. O. Box 3412<br>Omaha, NE 68103 | | H | | | | | Notice Only |
| ACCOUNT NO.  1533<br><br>GEMB/Abt TV/Arrow Financial<br>c/o Northland Group<br>P. O. Box 390846<br>Minneapolis, MN 55439 | | H | Balance on Account | | | | 11,422.71 |

Sheet no. _2_ of _5_ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal➤  $  16,234.21

Total➤  $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re  Bryan S. Schmidt & Rhiannon S. Schmidt _____,          Case No. _____
                          **Debtor**                                                        **(If known)**

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  0800<br><br>Great Lakes Credit Union<br>2525 Green Bay Road<br>North Chicago, IL 60064 | | W | Repossessed Vehicle | | | | 8,243.00 |
| ACCOUNT NO.  0644<br><br>HBLC/GECAF/Jewelry Express<br>c/o Steven J. Fink & Assoc.<br>25 E. Washington, #1233<br>Chicago, IL 60602 | | H | Judgment on Account | | | | 10,108.01 |
| ACCOUNT NO.  5993<br><br>Highland Park Ob-Gyn Assoc.<br>60 Revere Drive<br>Suite 750<br>Northbrook, IL 60062-1593 | | J | Balance on Account | | | | 100.00 |
| ACCOUNT NO.<br><br>IL State Tollway Authority<br>c/o Arnold Scott Harris, P.C.<br>222 Merchandise Mart Plaza, #1932<br>Chicago, IL 60654 | | H | Balance on Account | | | | 1,635.30 |
| ACCOUNT NO.  8172<br><br>Johnson Co. Wastewater<br>c/o Kansas Counselors<br>P. O. Box 14765<br>Shawnee Mission, KS 66285 | | H | Balance on Account | | | X | 24.00 |

Sheet no. __3__ of __5__ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal▶  $    20,110.31

Total▶  $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re   Bryan S. Schmidt & Rhiannon S. Schmidt                    ,          Case No. _____
_____
                    **Debtor**                                                                                      **(If known)**

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  4316 <br> Lake County Acute Care LLP <br> c/o United Collection Bureau <br> 4400 North High Street <br> Columbus, OH 43214 | | J | Balance on Account | | | | 30.00 |
| ACCOUNT NO.  8380 <br> Midway Emergency Physicians <br> c/o Durham & Durham, LLP <br> 5665 New Northwide Dr., #340 <br> Atlanta, GA 30328 | | J | | | | | Notice Only |
| ACCOUNT NO.  3329 <br> Midway Emergency Physicians <br> P. O. Box 320006 <br> Birmingham, AL 35222-1308 | | J | Balance on Account | | | | 294.00 |
| ACCOUNT NO.  5307 <br> Midwest Diagnostic Pathology, SC <br> 75 Remittance Dr., #3070 <br> Chicago, IL 60675-3070 | | J | Balance on Account | | | | 28.00 |
| ACCOUNT NO.  6224 <br> Nelnet <br> Attn: Claims <br> P. O. Box 17460 <br> Denver, CO 80217 | | H | | | | | Notice Only |

Sheet no. __4__ of _5_ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal▶ | $ | 352.00

Total▶ | $ |

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re   Bryan S. Schmidt & Rhiannon S. Schmidt_____ ,        Case No. _____
_____Debtor_____                                    (If known)

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  6224 | | | Student Loan | | | | |
| Nelnet Loans 6420 Southpoint Pkwy Jacksonville, FL 32216 | | H | | | | | 4,030.00 |
| ACCOUNT NO.  6324 | | | Student Loan | | | | |
| Nelnet Loans 6420 Southpoint Pkwy Jacksonville, FL 32216 | | H | | | | | 3,657.00 |
| ACCOUNT NO.  8791 | | | | | | | |
| US Dept Of Education Attn: Borrowers Service Dept P. O. Box 5609 Greenville, TX 75403 | | W | | | | | Notice Only |
| ACCOUNT NO.  8791 | | | Student Loan | | | | |
| US Dept Of Education P. O. Box 5609 Greenville, TX 75403 | | W | | | | | 2,412.00 |
| ACCOUNT NO.  3329 | | | Balance on Account | | | | |
| Vista Medical Center East 99 Greenwood Avenue Waukegan, IL 60087-5136 | | J | | | | | 366.20 |

Sheet no. __5__ of __5__ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

| | |
|---|---|
| Subtotal ▶ | $ 10,465.20 |
| Total ▶ | $ 116,055.64 |

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

Bankruptcy2009 ©1991-2009, New Hope Software, Inc., ver. 4.4.9-749 - 43266 - Adobe PDF

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS
SUMMONS  (Action for $10,001 - $50,000)
(Name all parties)

STUDENT LOAN SOLUTIONS, LLC

                                        Plaintiff,

                vs.                                         THIS IS AN ARBITRATION CASE

BRYAN SCHMIDT AND RHIANNON SCHMIDT                          No. 19 AR 561

                                        Defendant(s).       Amt. Claimed $37,622.78 _____ plus costs

Address of Defendant(s):

RHIANNON SCHMIDT                          RHIANNON SCHMIDT
310 FOX RUN RD                            **ALTERNATIVE ADDRESS :**
LIBERTYVILLE, IL 60048-2424               3648 N LAKEWOOD AVE APT 1
                                          CHICAGO IL 60613-3784

                    THIS IS AN ALIAS ARBITRATION CASE
                                SUMMONS

TO EACH DEFENDANT:
        YOU ARE HEREBY SUMMONED and required to appear before this Court at 18 N. County Street, Waukegan, Illinois,
Courtroom ☒ 207 ☐ 201 at _1:30_ ☐ AM ☒ PM, on _____October 02_____ ,2019, * to answer the complaint in this case, a
copy of which is hereto attached. A Case Management Conference shall be held on the first return date after service.
NOTICE TO PLAINTIFF/PLAINTIFF'S ATTORNEY:
        * When preparing the above summons, you shall insert a return date not less than 28 nor more than 40 days after the date
of issuance. A disclosure statement pursuant to Supreme Court Rule 222 shall be attached to the complaint. If you fail to
appear on the return date shown above, the case may be dismissed for want of prosecution.

NOTICE TO DEFENDANT/DEFENDANT'S ATTORNEY:
        Parties are required to appear on the original return date or any continued date. If you fail to appear on the original return
date, a judgment by default may be entered against you without further notice.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-
filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If
you need additional help or have trouble e-filing, visit http://www.iilinoiscourts.gov/FAQ/gethelp.asp or talk with your local circuit
clerk's office.
To the Officer:
        This summons must be returned by the officer or other person to whom it was given for service, with endorsement of
service and fees, if any, immediately after service and not less than 3 days before the day for appearance. If service cannot
be made, this summons shall be returned so endorsed.

                                This summons may not be served later than 30 days after its date.
                                Witness  9/11/2019          , 20 _____

                                        Ena Cartaurguit Weinstein
                                        (Clerk of the Circuit Court)
                                        KS
                                        (Deputy)
_____
Prepared by:
MARKOFF LAW LLC
Robert G. Markoff
29 N. Wacker Drive # 1010
Chicago, IL  60606
Tel. (312) 698-7300 - Fax. (312) 698-7399
ARDC #:
service@markofflaw.com
368491   SAAR / LSG                                     #171-487 (Rev 12/17)

**Exhibit 3**

**SHERIFF'S FEES**

(Service and Return . . . . . . . . . . . . . . . . . . . . . . . $_____
(
(Miles _____ . . . . . . . . . . . . . . . . . . . . . $_____
(
(Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

Sheriff of _____ County

I certify that I served this summons on defendants as follows:

    (a) – Individual defendants – personal:

The officer or other person making service shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant.

_____
_____
_____

    (b) – Individual defendants – abode:

By leaving a copy and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons. The officer or other person making service shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person.

_____
_____
_____

And also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of Defendant | Mailing Address | Date of Mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

    (c) – Corporation defendants:

By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent, officer or agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

    (d) – Other Service:

_____
_____

_____, Sheriff of _____ County

By: _____

Dated this _____ day of _____, 20_____

#171-487 (Rev 12/17)

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

STUDENT LOAN SOLUTIONS, LLC
Plaintiff,

v.

No. 19AR00000561

BRYAN SCHMIDT AND RHIANNON SCHMIDT
Defendant(s)

Amount Claimed: $37,622.78
plus costs

Return Date: _____

## COMPLAINT

### THIS COMMUNICATION IS FROM A DEBT COLLECTOR

The Plaintiff claims as follows:

1. The Plaintiff is STUDENT LOAN SOLUTIONS, LLC.

2. Upon information and belief, Defendant, BRYAN SCHMIDT, resides in the County of Lake, State of Illinois. Defendant, RHIANNON SCHMIDT, resides in the County of Lake, State of Illinois.

3. Plaintiff is proceeding in this cause as the assignee and current owner of a student loan account (herein after "Account"). The Bill(s) of Sale related to the transfer of the Account are attached as Plaintiff's Group Exhibit "A".

4. On 03/04/2008, Defendant(s) entered into a Student Loan Agreement with Plaintiff's Assignor. Said Agreement is attached hereto as Exhibit "B".

5. Subsequently, pursuant to said Agreement, money was advanced to Defendant(s) by Plaintiff's Assignor.

6. Plaintiff and/or Plaintiff's Assignor performed all the conditions and duties on their part.

7. The Defendant(s) is/are in default and there is due and owing to Plaintiff the sum of $37,272.78, including interest and other charges. See Affidavit of Student Account attached hereto as Exhibit "C".

8. Plaintiff further seeks reasonable attorney's fees as provided in Plaintiff's Exhibit B, and accordingly requests the amount of $350.00.

9. Due demand has been made on Defendant(s) to pay this amount, and Defendant(s) has failed to do so.

10. This lawsuit has been filed within the relevant statute of limitations.

WHEREFORE, Plaintiff prays that judgment in the amount of $37,622.78 plus costs be entered against Defendant(s) BRYAN SCHMIDT AND RHIANNON SCHMIDT.

MARKOFF LAW LLC
Jeneé Gaskin- 6312870
Attorneys for Plaintiff --
29 N. Wacker Drive # 1010
Chicago, IL 60606
Tel. (312) 698-7300 - Fax. (312) 698-7399
service@markofflaw.com

Respectfully submitted,

MARKOFF LAW LLC

By: /s/ Jeneé Gaskin
One of Plaintiff's Attorneys

J68491   COWFN \ NCG

STUDENT LOAN SOLUTIONS, LLC

         Plaintiff,   No.

   v.

BRYAN SCHMIDT AND RHIANNON SCHMIDT

         Defendant.

## CREDIT CARD OR DEBT BUYER COLLECTION ACTION AFFIDAVIT
### (SUPREME COURT RULE 280.2)

INSTRUCTIONS: Provide the following information and documents. Supreme Court Rule 280.1 provides the definitions of the terms of this Affidavit.

Comes now affiant, and states:

☐ I   Christopher P. Ruh      am Plaintiff
   (Name of Affiant)

OR

☑ a designated Agent of STUDENT LOAN SOLUTIONS, LLC (Plaintiff)

I am of adult age and am fully authorized by Plaintiff to make the following representations. I am familiar with the record keeping practices of Plaintiff. The following representations are true according to documents kept in the normal course of Plaintiff's business and/or my personal knowledge.

1. INDENTIFICATION ABOUT THE CONSUMER DEBT OR ACCOUNT

  Complete the tables and check all applicable boxes.

  a. As of charge-off date:

| Full name of the creditor | Full name of the defendant as it appears on the account | Last four digits of the account number | Date the account was opened, or the debt originated | Nature of the debt (credit card debt, payday loan, retail installment contract, etc.) |
|---|---|---|---|---|
| BANK OF AMERICA, N.A. | BRYAN SCHMIDT AND RHIANNON SCHMIDT | | 03/12/08 | Student Loan |

  b. Attach one of the following:

   ☑ The written contract giving rise to the debt that is the subject of this court case (the "Consumer Debt").

   ☐ The court case is based on an unwritten contract and attached is a copy of a document provided to the consumer while the account was active, demonstrating that the consumer debt was incurred by the consumer. For a revolving credit account, a statement reflecting the charge-off balance shall be deemed sufficient to satisfy this requirement. The Plaintiff further certifies that it has in its possession and can produce on request the most recent monthly statement recording a purchase transaction, last payment, or balance transfer. The statement reflecting the charge-off balance will not reflect any post charge-off payments or credits by or to the charge-off creditor, the debt

buyer or their attorneys.

c. The most recent activity on the account prior to or after charge-off, includes:

| Charge-off Balance | Charge-off Date | Date of Last Payment | Amount of Last Payment | Total Amount of Credits and/or Payments Since Charge-off Date* |
|---|---|---|---|---|
| 37,272.78 | 08/23/10 | N/A | N/A | N/A |

\* Credits or payments made within 30 days of the signing of this affidavit may not be reflected.

2. PROOF OF OWNERSHIP OR RIGHT TO SUE FOR DEBT BUYERS

Complete the table and list the prior owners or creditors since the charge-off date. Start with the first assignment through the current creditor or owner of the consumer debt. List in chronological order, beginning with the first assignment:

| From (Name) | To (Name) | Date of Assignment (On or About) |
|---|---|---|
| Bank of America | Student Loan Solutions, LLC | 10/31/17 |
|  |  |  |
|  |  |  |
|  |  |  |

☐ Does not apply – Plaintiff is the charge-off creditor

3. ADDITIONAL ACCOUNT INFORMATION AFTER CHARGE-OFF

Plaintiff is seeking additional amounts after the charge-off date:

☐ No

☑ Yes
    ☐ Total amount of interest accrued: $0.00_____;
    ☐ Total amount of non-interest charges or fees accrued $ 0.00_____;
    ☐ Plaintiff is seeking attorney's fees in the amount of $__350.00_____.

Affiants may certify their statements pursuant to section 1-109 of the Code of Civil Procedure or have their signature notarized in the manner required by law.

Under penalties as provided by law under section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as Aforesaid that [s]he verily believes the same to be true.

_Christopher P. RL_____    _____    _4/11/19_____
Name of Affiant                   Signature of Affiant                 Date

368491  A280 / NCO

## BILL OF SALE

FOR VALUE RECEIVED, BANK OF AMERICA, N.A. ("Seller"), pursuant to the terms and conditions of that certain Loan Sale Agreement dated as of October 31, 2017 (the "Agreement") by and between Seller and Student Loan Solutions, LLC, a South Carolina limited liability company ("Purchaser"), does hereby grant, sell, assign, transfer, and convey to Purchaser and its successors and assigns, all right, title, and interest of Seller in and to the following: (1) the Loans described in Annex I attached hereto (the "Purchased Loans"); (2) all Notes relating to such Purchased Loans and related Loan Documents; (3) the servicing rights relating to such Purchased Loans; (4) all collections, revenues and recoveries of principal and interest from the Purchased Loans, including all Borrower payments, to the extent due or to become due on the Purchased Loans as of the related Cut-Off Time and (5) the proceeds of any of the foregoing, but excluding any proceeds of the sale made hereby. All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

TO HAVE AND TO HOLD the same unto Purchaser, its successors and assigns, forever. This Bill of Sale is made pursuant to and is subject to the terms and provisions of the Agreement, and is without recourse, except as provided in the Agreement.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed by one of its officers duly authorized to be effective as of the 31st day of October, 2017.

BANK OF AMERICA, N.A.

By: _____

Name: Debra J. Minton

Title: Senior Vice President



## BLANKET ENDORSEMENT OF
## STUDENT LOAN PROMISSORY NOTES

Pursuant to the certain Loan Sale Agreement dated as of October 31, 2017 (the "Agreement") by and between the undersigned ("Seller") and Student Loan Solutions, LLC, a South Carolina limited liability company ("Purchaser"), Seller, by execution of this instrument, hereby endorses all promissory notes relating to the Loans purchased by Purchaser set forth in Annex I hereto. This endorsement is in blank, unrestricted form. Except as stated in the foregoing sentence, this endorsement is without recourse, except as provided under the terms of the Agreement. All right, title, and interest of Seller in and to the promissory notes and related documentation identified in the Bill of Sale are transferred and assigned to Purchaser. All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

This endorsement may be further manifested by attaching this instrument or a facsimile hereof to each or any of the promissory notes and related documentation acquired by Purchaser from Seller, or by attaching this instrument to the listing report referenced in Annex I hereto, as Purchaser may require or deem necessary.

Dated this 31st day of October, 2017.

BANK OF AMERICA, N.A.

By: _____

Name: Debra J. Minton

Title: Senior Vice President

**Cosigned CEL — Loan Request/Credit Agreement — Information Page**

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Education Maximizer Continuing Education Loan

Lender: Bank of America, National Association          School: TRITON COLLEGE

Loan Amount Requested: $28510.00     Academic Period: 03/2008-06/2008

Deferral Period Margin: 5.75          Repayment Period Margin: 5.75          Loan Origination Fee Percentage: 9.50

### STUDENT BORROWER INFORMATION

Borrower Name: Bryan Schmidt          Home Address: 5395 Virginia Ct Gurnee, IL 60031
Social Security #:                    Date of Birth:          Home Telephone:
Mobile Telephone:                     E-mail Address:

Student Citizenship (check one box):  ☒ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Mark S Schmidt                    Reference Home Tel #: (847) 838-4155          Work Tel #:
Reference Street Address: 1500 Eagle Ridge Drive
Reference City/State/Zip:  Antioch, IL 60002

### COSIGNER INFORMATION (Must be age of majority in state of residence)

Cosigner Name: Rhiannon Schmidt          Home Address: 5395 Virginia Ct Gurnee, IL 60031
Social Security #:                       Date of Birth:          Home Telephone: (847) 672-9856
Mobile Telephone:                        E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy?  ☒ No    ☐ Yes
Current Employer: CARE ANIMAL HOSPITAL                                        Employer Telephone: (847) 549-8500
Current Position: Office staff                Years There: 2 Years
Years at Previous Employment: 0 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):  ☒ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name: Mary Bahl                          Reference Home Tel #: (417) 886-8210          Work Tel #:
Reference Street Address: 2010 W Arlington St
Reference City/State/Zip:  Springfield, IL 65810

Borrower and Cosigner: Read and, where indicated, sign and date the next page.

BK.07-08.CLCO.10DC.0107          LENDER COPY
PN01_BD_07-08_CLCO_F_X_SCHMIDT_A106755731.pdf



EXHIBIT B

BKXCDF

## Cosigned CEL • Loan Request/Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all six (6) pages of this Loan Request/Credit Agreement BK.07-08.CLCO.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

### FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

<u>NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):</u>
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

<u>AVISO PARA EL FIADOR (Spanish Translation Required by Law):</u>
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si se ve obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, más los cargos por tardanza en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de crédito de usted.

Este aviso no es el contrato mismo en que se lo echa a usted la responsabilidad de la deuda.

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS – NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS LOAN REQUEST/CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS LOAN REQUEST/CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page (and the Information Page) with Proof of Income and Enrollment. – FAX TO: 800-704-9406

Signature of Borrower _____    Date 3/4/08

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _____    Date 3/4/08

**BK.07-08.CLCO.10DC.0107**    LENDER COPY
PN01_BD_07-08_CLCO_F_X_SCHMIDT_A106756731.pdf                    BKXCDF

## NOTE DISCLOSURE STATEMENT

$ 31,502.76

Loan No. ____

Borrower(s): BRYAN SCHMIDT
RHIANNON SCHMIDT

Student: BRYAN SCHMIDT
Date: March 12, 2008

BRYAN SCHMIDT
5395 VIRGINIA CT
GURNEE, IL 60031 USA

Lender Name and Address:
BANK OF AMERICA, N.A.
600 WILSHIRE BLVD, 4TH FLOOR
LOS ANGELES, CA 90017

This disclosure statement relates to your Loan Note disbursed on ____ March 12, 2008 ____.
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE<br>The cost of your credit is a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 9.993 % | $ 52,019.60 | $ 28,510.00 | $ 80,529.60 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 335.54 | On the 12th day of each month beginning 4/2010 |
| | | |
| | | |
| | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ LIBOR Index Adjusted Monthly - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)          $ 31,502.76

Itemization of Amount Financed
Amount paid to  BRYAN SCHMIDT  and                $ ____
Amount paid to  RHIANNON SCHMIDT                  $ 28,510.00
Total Amount Financed                                               $ 28,510.00

Itemization of Prepaid Finance Charge
Origination Fee                                   $ 2,992.76
Total Prepaid Finance Charge(s)                                     $ 2,992.76

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "your", "you", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Borrower without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the earliest of: (i) 180 days after the student Borrower graduation or earns a certificate, (ii) 180 days after the student Borrower ceases to be enrolled at the School, or (iii) 2 years after date of the loan disbursement under the Credit Agreement.

4. The "Repayment Period" begins the day after the Deferment Period ends. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The Index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – I am not obligated to make any payments until the loan enters the Repayment Period. You may add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan as of the last day of the Deferment Period and at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**

1. Deferment Period – You may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to me at the address shown on your records. I may, but am not required to, make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the

Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and other costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph 8.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify those terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may

also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the

Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the student Borrower fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, any other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g. enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender. You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party in this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

## M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important Information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in any credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for student Borrowers (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:

NOTICE: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in this Credit Agreement or contract. You will also have to pay some or all of these costs and charges if this Credit Agreement or contract, the payment of which you are

guaranteeing requires the Borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.
FOR OBLIGORS COSIGNING IN VERMONT:

NOTICE TO COSIGNER

YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.
FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

NOTICE TO COSIGNER
You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the Borrower. The creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

# ACCOUNT STATEMENT

DATE                                January 30, 2019
INSTITUTION               STUDENT LOAN SOLUTIONS, LLC
STUDENT'S NAME                  SCHMIDT, BRYAN
COMAKER                 SCHMIDT, RHIANNON
ACCOUNT NUMBER
DATE OF CONTRACT / DISBURSEMENT           03/12/08
DATE OF PROMISSORY NOTE                03/04/08
DATE OF CHARGE OFF / DEFAULT             08/23/10
DATE OF LAST PAYMENT               None Received
DATE DEFERMENT/FORBEARANCE EXPIRED     None Received

UNPAID PRINCIPAL AT THIS DATE           $      36,405.44
UNPAID INTEREST AT THIS DATE             $        867.34

TOTAL DUE                          $      37,272.78

STATE OF SOUTH CAROLINA
COUNTY OF YORK

I AFFIRM THAT AS OF THIS DATE THE ABOVE BALANCE IS TRUE AND CORRECT
TO THE BEST OF MY KNOWLEDGE

_____          2/5/19
CHRISTOPHER F. RUH / GENERAL MANAGER       DATE

SWORN TO AND SUBSCRIBED BEFORE ME THIS __5__ DAY OF
__February__ , 20__19__
_____          JENNIFER G. RUH
NOTARY PUBLIC(SIGNATURE)           NAME

MY COMMISION EXPIRES     APRIL 10, 2024





IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

)
STUDENT LOAN SOLUTIONS, LLC )
Plaintiff(s) )
vs. )
)
)
BRYAN SCHMIDT AND RHIANNON SCHMIDT )
Defendant(s) )

Gen No: 19AR561

AMENDED
AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222 (B)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named plaintiff certifies that plaintiff seeks money damages in this claim does NOT exceed $50,000.00.

By

_Jenee Gaskin_

Attorneys for Plaintiff

Jenee Gaskin

Prepared by:
Name: JENEE GASKIN-MARKOFF LAW, LLC    Pro Se ☐
Address: 29 N. WACKER DR STE 1010
City: CHICAGO          State: IL
Phone: 312-698-7300     Zip Code: 60606
ARDC #: 6312870
Fax: 312-698-7399
E-mail address: SERVICE@MARKOFFLAW.COM

#171-312 (Rev 12/17)

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

STUDENT LOAN SOLUTIONS, LLC

       Plaintiff,

       vs.

BRYAN SCHMIDT AND RHIANNON SCHMIDT

       Defendant(s).

No: 19AR00000561

### AFFIDAVIT AS TO MILITARY SERVICE

I, _Jeneé Gaskin_____ , on oath states:

With respect to Defendant(s), BRYAN SCHMIDT AND RHIANNON SCHMIDT, he/she/they is/are not in the military service of the United States. This Affidavit is based on these facts:

I CHECKED https://www.dmdc.osd.mil/scra/owa/scra.home.

Under penalties as provided by law pursuant to Ill. Rev. Stat. Chapter 110, Section 1-109 of the above signed certifies that the statements set forth herein are true and correct upon information and belief.

MARKOFF LAW LLC

/s/ Jeneé Gaskin
Attorney for Plaintiff

MARKOFF LAW LLC
Jeneé Gaskin- 6312870
Attorneys for Plaintiff –
29 N. Wacker Drive # 1010
Chicago, IL 60606
Tel. (312) 698-7300 - Fax. (312) 698-7399
service@markofflaw.com

368491 AMS / NCG



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:               XXX-XX-████
Birth Date:
Last Name:     SCHMIDT
First Name:    BRYAN
Middle Name:
Status As Of:  May-28-2019
Certificate ID: DL6VFYD753ZDY7P

| On Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

Department of Defense Manpower Data Center



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-████
Birth Date:
Last Name:      SCHMIDT
First Name:     RHIANNON
Middle Name:
Status As Of:   May-28-2019
Certificate ID: 5T8SW9XT655BQ9P

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

# MAGEE HARTMAN, P.C.

ATTORNEYS AT LAW
444 NORTH CEDAR LAKE ROAD
ROUND LAKE, ILLINOIS 60073
(847) 546-0055 PHONE
(847) 546-8390 FAX
PLEADINGS@MAGEEHARTMAN.COM

JAMES T. MAGEE
----------
MICHELLE A. MAGEE
ROBERT J. MAGEE
JAMES C. HARTMAN

November 26, 2019



Markoff Law LLC
29 N. Wacker Drive # 1010
Chicago, IL 60606

**Via Regular Mail and Email: service@markofflaw.com**

Re: Student Loan Solutions LLC v. Schmidt
Lake County # 19 AR 561
Bankruptcy Case # 09-37631
Debtors: Bryan S. Schmidt and Rhiannon
Schmidt

## NOTICE OF VIOLATION OF PERMANENT DISCHARGE INJUNCTION

Dear Sir or Madam:

I write on behalf of our clients Bryan S. Schmidt and Rhiannon Schmidt. Mr. and Mrs. Schmidt filed a Chapter 7 bankruptcy and received a discharge in 2010. The debt sought to be collected by Student Loan Solutions LLC was included in the Debtors' bankruptcy petition and list of creditors. The creditor at that time was AES Bank of America and this debt was listed in the bankruptcy petition, notice sent to AES Bank of America, and this debt was discharged. Attached for further reference is a copy of Debtors' Discharge of Joint Debtors and Certificate of Notice.

Demand is made that the lawsuit # 19 AR 561 be dismissed with prejudice immediately and no further attempts made to collect this debt. If this lawsuit is not dismissed with prejudice in 14 days, we intend to seek sanctions for violation of the permanent discharge injunction of Section 524(a)(2) of the Bankruptcy Code.

Yours truly,

James T. Magee

RJM:rjm
cc: clients

**Exhibit 4**