UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: )
)
BRYAN S. SCHMIDT and RHIANNON S. SCHMIDT, ) Case No. 09-37631
)
Debtors. )

## REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Now come the Debtors, and present their Reply in support of their Motion for Sanctions:

### I. Creditor must prove that the debt is non-dischargeable

Section 523(a)(8) of the Bankruptcy Code provides:

(a) A discharge under section 727... of this title does not discharge an individual debtor from any debt - ...
    (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for-

    (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
      (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

While Debtors must file an adversary complaint if they were arguing that an otherwise non-dischargeable student loan was an "undue hardship" under Section 523(a)(8), the Code provides for discharge of private student loans unless they are specifically excepted. There is no requirement that a debtor file an adversary to determine dischargeability of a debt that is encompassed within the discharge of Section 727 and not subject to any exceptions. *See In re McDaniel,* 590 B.R. 537, 552 (Bankr. D. Colo. 2018) (that neither party sought to determine dischargeability while the bankruptcy was pending did not alter whether or not the debt was discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter, both debtor and creditor proceeded at their own risk).

1

Exceptions to discharge are construed narrowly against a creditor and liberally in the debtor's favor. *In re Reines,* 142 F.3d 970, 972 (7th Cir. 1998). Generally, Section 523(a)(8) applies only to three categories of educational debt: (1) government and nonprofit-backed loans and educational benefit overpayments, (2) obligations to repay funds received as an educational benefit, scholarship, or stipend, and (3) qualified education loans. Unless an educational debt falls within one of these classifications, it is dischargeable through the normal bankruptcy process. *See McDaniel v. Navient Solutions, LLC*, No. 18-1445 (10th Cir. Aug. 31, 2020) (citation omitted).

It has long been established that the party wishing to fit within an exception to discharge bears the burden of proof. *See In re Taylor,* 191 B.R. 760, 763-64 (Bankr. N.D. Ill.1996); *In re McDaniel,* 590 B.R. at 545 (creditor must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8) ). In the context of 523(a)(8), that rule makes practical sense because it is "consistent with the parties' relative access to information." *In re Rowe*, 686 B.R. 466, 470 (Bankr. W.D.Wisc. 2018) (citation omitted).

## II. The loan document's reference to exceptions to discharge is neither dispositive nor demonstrative

If Creditor is arguing that Debtors have already agreed that the loan is a non-dischargeable student loan, that argument is without merit. Pre-petition contracts agreeing a debt is non-dischargeable are unenforceable. *See Klingman v. Levinson,* 831 F.2d 1292, 1296 n. 3 (7th Cir.1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy.")

Bankruptcy courts have construed loan provisions nearly identical to the one Creditor relies on here - that "either or both" discharge exceptions of Section 523(a)(8) applied as the loan was either part of a program funded by TERI (a non-profit company), an/or the loan was a "qualified education loan" under the Internal Revenue Code - and found these to be of no evidentiary value:

> The Trusts point to language in the loan documentation to the effect that Ms. Golden's loan is "'subject to the limitations on dischargeability in bankruptcy contained in [Bankruptcy Code] Section 523(a)(8)' " because "'either or both'" of certain grounds for discharge exceptions apply.

2

*In re Golden*, 596 B.R. 239, 266 (Bankr. E.D.N.Y. 2019).

However, "…more is required to satisfy the requirements of Section 523(a)(8) than a statement in a loan document that 'either or both' of certain exceptions from discharge may apply." *In re Golden*, 596 B.R. at 267. "If that language alone were sufficient, then it is hard to see what role would be left for Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy Code. At the most, the Trusts have identified a disputed issue of fact that is not ripe for resolution at this stage of these proceedings." *Id.*

As it is Creditor who has access to business records that would prove these assertions, it is Creditor's burden to prove the debt is excepted from discharge. *See In re Rowe*, 686 B.R. at 470.

### III. Creditor has not proven the loan was excepted from discharge under Section 523(a)(8)(A)(i) or Section 523(a)(8)(B)

Creditor argues that the contract attached to its unverified lawsuit provide that the loan was subject to discharge exceptions of Section 523(a)(8) - "either or both" that the loan program[1] was funded/guaranteed by TERI, a non-profit, and/or the loan is a "qualified education loan". However, mere reference to TERI is not competent evidence to prove the existence of a guaranty:

> The only evidence that [creditor] offers concerning the existence of a guaranty is that the Loan Documents signed by Debtor contain a statement reading "I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by [TERI]." Cummins Decl., Exh. A at 4. [Creditor] has not shown how Debtor would be competent to testify to such a fact. Because there is no suggestion in the record that Debtor ever had personal knowledge of the existence or terms of a third-party guaranty, the boilerplate language of the Loan Documents cannot prove the actual existence of a guaranty. Aside from the language of the contract, [creditor] has introduced no evidence showing that the loan was made or guaranteed by a nonprofit or governmental agency—accordingly, [creditor] has not shown that the Debt is nondischargeable under § 523(a)(8)(A)(i).

*In re Clouser*, Case 11-33104-tmb7, 2016 WL 5864493, * 3 (Bankr. D.Or. 2016).

In the instant case, the loan documents may refer to a guarantee by TERI, but "the boilerplate language of the Loan Documents cannot prove the actual existence of a guaranty". *See In re Holguin*, 609 B.R. at 888; *see also In re Greer-Allen*, 602 B.R. 831, 838 (Bankr. D. Mass. 2019)

---

[1] The specific loan program which TERI supposedly guaranteed or funded is not identified.

3

("[T]he language in the loan documents is not, standing alone, sufficient to prove the existence of the guarantees [by TERI].") Moreover, the creditor must identify the specific loan program funded by a nonprofit. *See In re Wiley*, 579 B.R. 1, 6-7 (Bankr. D. Me. 2017).

TERI filed Chapter 11 on April 7, 2008, and was experiencing significant financial problems prior to its bankruptcy. *See First Marblehead Corp. v. TERI*, 463 B.R. 151, 153-54 (Bankr. D. Mass. 2011) ("[B]y the spring of 2008, the financial crisis had dried up the market for securities backed by student loans, and TERI's revenue dropped significantly. On March 26, 2008, TERI's issuer rating was downgraded, causing a lender to demand the segregation of reserves to its loans guaranteed by TERI. *Id.* ¶ 17. TERI could not meet the reserve requirement without jeopardizing its ability to meet other obligations and decided to file a Chapter 11 petition on April 7, 2008.")

Debtors' loan was closed on March 12, 2008, just weeks before TERI's bankruptcy, and whether TERI actually guaranteed anything is unproven and far from clear.[2] As Creditor has failed to prove the existence of a TERI guarantee of an identifiable loan program, Creditor has not proven the claimed exception to discharge under 523(a)(8)(A)(i).

Additionally, Debtors deny[3] and Creditor has not proven that the loan was a "qualified" loan under Section 523(a)(8)(B). Under the IRC definition, a "qualified education loan" must not exceed the "cost of attendance." *See* 26 U.S.C. §221(d)(1), (2). If the loan exceeds the cost of attendance, it is not a "qualified education loan." *See* 26 C.F.R. §1.221-1(e)(4) ex. 6 (distinguishing between loans used "solely" to pay the cost of attendance and "mixed use" loans).

Had Creditor presented evidence as to the cost of attendance for a single semester at Triton College, the evidence would demonstrate that the subject loan amount of $28,510 far exceeded the

---

[2] At least one court has found that the purported guaranty from TERI had actually expired before the debtor obtained the loan, and the creditor could not establish that the loan was part of a loan program funded in part by a nonprofit under Section 523(a)(8)(A)(i). *See In re Holguin*, 609 B.R. 878, 888 (Bankr. D.N.M. 2019).

[3] Schedule F in Debtors' Petition lists the subject loan as a "non-qualifying" student loan. *Debtors' Motion for Sanctions, Ex. 2.*

4

cost of attendance for a single semester at Triton College in 2008. *See Ex. 1,* Triton College Handbook 2007-2008, *available at* http://triton.smartcatalogiq.com/en/2017-2018/Triton-College-Catalog/Admission-and-Registration/Tuition-and-Fees (2008 catalog found at tab on top-right of webpage) (last visited on September 30, 2020) (listing in-district tuition for Triton College 2008 semester at $56 per semester hour); *see also Ex.2,* U.S. Department of Education, "College Scorecard", *available at* https://collegescorecard.ed.gov/school/?149532-Triton-College (last visited on September 30, 2020) (listing "Average Annual Cost" for Triton College at $4,675).

**IV.  Creditor has not proven it has standing or is the holder of the loan**

Creditor has failed to present any admissible evidence to prove that Creditor has standing to sue on the debt or is the holder of the loan. While Debtors have attached a copy of the collections lawsuit and loan agreement to their Motion for Sanctions, there is no competent evidence actually demonstrating a transfer of the subject loan from original lender Bank of America to Creditor.

**Conclusion**

Creditor has failed to meet its burden to prove a specific exception to discharge applies. Creditor's reckless and unlawful collection efforts after Debtors' debt was discharged were made knowingly and willfully in violation of this Court's Discharge Order, with this willfulness confirmed by Creditor's Response and stated intent to continue its collections efforts.

Respectfully submitted,

BRYAN S. SCHMIDT and RHIANNON S. SCHMIDT, Debtors;

By: _____
James T. Magee, their Attorney.

James T. Magee (#1729446)
MAGEE HARTMAN, P.C.
444 North Cedar Lake Road
Round Lake, Illinois 60073
bk@mageehartman.com
(847) 546-0055

3. Evaluation of non-traditional learning and awarding of academic credit for such learning, where applicable;
4. Evaluation of requests for inter-institutional transfer of credits and acceptance of such credits where appropriate; and
5. Flexibility in satisfying residence requirements by making adjustments for military students who transfer from other college districts.

The college is also a charter member of the Servicemembers' Opportunity College Associate Degree Program (SOCAD) Network. The network was established by the American Association of State Colleges and Universities at the request of the U.S. Army to better serve Army-enlisted personnel. Triton and other participating colleges in the network offer a flexible degree program in general studies. Military personnel can complete degree requirements by taking courses at other network colleges. For information about the SOCAD program, contact the Office of Veteran Services, (708) 456-0300, Ext. 3531.

## International Student Admission

All applicants are required to contact the Records Evaluator for specific admission procedures. International students applying to Triton College are required to take the Test of English as a Foreign Language (TOEFL) and must attain a score of 500 on the examination, with a score of at least 50 in each category.

International students must enroll in a minimum of 12 semester hours and must complete their degree objectives within six semesters. International students pay the out-of-state tuition rate. Financial assistance will not be available to international students.

The Records Evaluator will issue the required Immigration Form 20 (I-20) only after all required documents have been submitted and the student's application for admission has been accepted.

Other non-native students, whether holding diplomatic, visitor or other non-immigrant visas, must pay out-of-state tuition rates. (For information, contact the Records Evaluator, Office of Admission and Records at (708) 456-0300, Ext. 3733.)

## High School Student Admission

High school students may be permitted to take college courses after obtaining the written approval of their high school principal or counselor. The college reserves the right to require "ability to benefit" testing for all non-high school graduates prior to admission. (Triton evening high school registration forms are available in the Adult Basic Education department (Room R-106) or in the guidance offices of area high schools. For more information, call (708) 456-0300, Ext. 3609.)

## Registration

A schedule of classes will be mailed to all in-district homes before each term for the convenience of residents who may want to enroll at Triton College. A notice to register is issued to students who are currently enrolled.

Students may register in person for all courses, by telephone or Internet for many occupations and university transfer credit courses and almost all courses offered through the School of Continuing Education. To insure proper academic placement, degree seeking students, first time enrolled, will be required to participate in new student orientation and placement testing (see Academic Placement, page 30).

Students may pay tuition and fees in cash, by check or by bank card. Failure to comply with payment deadlines may result in cancellation of enrollment and the need to re-register, with no assurance that the same class schedule will be available.

(Inquiries concerning registration dates and procedures should be directed to Admission Call Center at (708) 456-0300, Ext. 3130, or the Triton College Web site: www.triton.edu.)

## Tuition and Fees

**Tuition**
In-District . . . . . . . . . . . . . . . . . . . $56 per semester hour
Out-of-District* . . . . . . . . . . $174.80 per semester hour
Out-of-State/International Visa Students
. . . . . . . . . . . . . . . . . . . . $222.32 per semester hour

*Out-of-district student tuition — Students not residing within the Triton College district must pay out-of-district tuition unless the student qualifies for a chargeback or cooperative instructional program as outlined in this catalog. The out-of-district rate is calculated by a formula as prescribed by the Illinois Community College Board.

**Student Services Fee (nonrefundable)**
. . . . . . . . . . $5.00 per credit hour, $60 maximum
Auxiliary Fee . . . . . . . . . . . . . . . . . . . . . . .$1 per course

**Registration Fee**
Full-time students . . . . . . . . . . . . . . . . . . . . . . . . . $10
Part-time students . . . . . . . . . . . . . . . . . . . . . . . . . $5

**Technology Fee**
Full-time students . . . . . . . . . . . . . . . . . . . . . . . . . $50
Part-time students . . . . . . . . . . . . . . . . . . . . . . . . . $25

**Charged Where Applicable**
Graduation fees (non-refundable)
    Degree or Certificate . . . . . . . . . . . . . . . . . . . . . $12
    Additional Degrees or Certificates . . . . . . $12 each
    Advanced Certificate . . . . . . . . . . . . . . . .$12 each
    Cap and Gown fee . . . . . . . . . . . . . . . . . . . . . TBA
Course fee . . . . . . . . . . variable (lab fees, supplies, etc.)
Late Registration . . . . . . . . . . . . . . . . . . . . . . . . . . $7
Proficiency Examination . . . . . . . . $5 per course credit
Academic Transcript. . . . . . . . . . . . . . . . . . . . . . . $3
All fees are subject to revision by the Triton College Board of Trustees without prior notice.

**Out-of-District Students/Chargebacks**
Individuals who reside outside the Triton College district and want to enroll in a curriculum that is not offered by their local community college must apply for tuition assistance from their community college district at least 30 days before the beginning of the term for which they intend to enroll. The tuition assistance is called a "chargeback."

Many community college districts do not approve chargebacks for college success courses and/or continuing education courses. It is the responsibility of the student to consult with their home district regarding availability.

**Athletic Tuition Waiver Policy**
Student-athletes eligible under National Junior College Athletic Association (NJCAA) and Conference standards are considered qu[...]


EXHIBIT 1



**U.S. DEPARTMENT OF EDUCATION**
College Scorecard

« BACK TO SEARCH

 

# Triton College

River Grove, IL
8,029 undergraduate students
triton.edu

| Year | Public | Suburban | Medium |
|---|---|---|---|

Hispanic-Serving Institution



EXHIBIT 2



**U.S. DEPARTMENT OF EDUCATION**
# College Scorecard

**19%**

## Salary After Completing ⓘ

Salary after completing depends on field of study.

$0     $23,200     $61,000     $150,000

## Average Annual Cost ⓘ

Cost includes tuition, living costs, books, and fees minus the average grants and scholarships for federal financial aid recipients.

# $4,675

EXPAND ALL     CLOSE ALL

Costs ⌄

Graduation & Retention ⌄

Financial Aid & Debt ⌄

Salary After Completing by Field of Study ⌄



**U.S. DEPARTMENT OF EDUCATION**
College Scorecard

## Test Scores & Acceptance

## Find Another School

🔍 Type to search

## Learn More About Paying for College

Paying for college can be a concern, but there are options to help! You can learn more about the types of financial aid that are available at StudentAid.gov.

To receive financial aid, you must complete the *Free Application for Federal Student Aid* (FAFSA®) form. You can use FAFSA*4caster* to see how much aid may be available to you.

START MY FAFSA® FORM

Don't forget: Do fill out the FAFSA® form, but also look into other programs such as GI Bill Benefits that may also help you pay for school.

Powered by College Scorecard Data | v2.3.3 | Contact Us | Notices | Glossary | U.S. Department of Education

ZIP Code latitude and longitude provided by GeoNames under a Creative Commons Attribution 3.0 License.